Vincent P. Hurley #111215
Amanda Cohen #243946
LAW OFFICES OF VINCENT P. HURLEY
A Professional Corporation
38 Seascape Village
Aptos, California 95003
Telephone:  (831) 661-4800
Facsimile:  (831) 661-4804

Attorneys for Defendants
CITY OF MONTEREY, CHIEF PHILIP PENKO, and OFFICER BRENT HALL

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Estate of JOSHUA CLAYPOLE, deceased, by and through SILVIA GUERSENZVAIG, as Administrator; SILVIA GUERSENZVAIG, <br><br>    Plaintiff, vs.<br><br>COUNTY OF SAN MATEO; SHERIFF GREG MUNKS, in his individual and official capacity; COUNTY OF MONTEREY; SHERIFF SCOTT MILLER, in his individual and official capacity; SERGEANT E. KAYE, in his individual and official capacity; CITY OF MONTEREY; MONTEREY POLICE DEPARTMENT CHIEF PHILIP PENKO, in his individual and official capacity; BRENT HALL, in his individual and official capacity; CALIFORNIA FORENSIC MEDICAL GROUP; DR. TAYLOR FITHIAN, in his individual and official capacity; COMMUNITY HOSPITAL OF MONTEREY PENINSULA; and DOES 1 through 30,<br><br>    Defendants. | Case No.  C14-02730 BLF<br><br>MOTION TO DISMISS COMPLAINT WITHOUT LEAVE TO AMEND BY DEFENDANTS CITY OF MONTEREY, CHIEF PHILIP PENKO, AND OFFICER BRENT HALL<br><br>Federal Rule of Civil Procedure 12(b)(6)<br><br>Date:         September 18, 2014<br>Time:         9:00 a.m.<br>Courtroom:  3, Fifth Floor |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on September 18, 2014, at 9:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled court, located at 280 South First Street, San Jose, California, Defendants CITY OF MONTEREY, CHIEF PHILIP PENKO, and OFFICER

1  BRENT HALL will and hereby do bring this motion to dismiss Plaintiffs' complaint pursuant to
2  Federal Rule of Civil Procedure 12(b)(6), because Plaintiffs' complaint fails to state a claim
3  upon which relief may be granted against any of the moving Defendants.
4      The motion will be based on this notice of motion, memorandum of points and
5  authorities, and the pleadings and papers filed herein.

7  Dated:  August 5, 2014

                                  LAW OFFICES OF VINCENT P. HURLEY
                                  A Professional Corporation

                                By: _____/s/_____
                                      AMANDA COHEN
                                Attorneys for Defendants CITY OF MONTEREY,
                                CHIEF PHILIP PENKO, and OFFICER BRENT
                                HALL

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants CITY OF MONTEREY, CHIEF PHILIP PENKO, and OFFICER BRENT HALL submit the following memorandum in support of their timely motion to dismiss the complaint without leave to amend pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.
## INTRODUCTION

The City of Monterey Police Department interacted with Plaintiff Joshua Claypole and had custody of him for a period of no more than 7 hours on the afternoon of May 1, 2013. Claypole was then transferred to the Monterey County Jail, where, more than two and a half days later, at 2:30 p.m. on May 4, 2013, Claypole was found to have committed suicide while in the custody of Monterey County. Claypole had been put on suicide watch at the Monterey County Jail and then taken off of it. Any special relationship City of Monterey had with Claypole by virtue of arresting him and holding him ended when he left City of Monterey custody. Plaintiffs have not alleged how any City of Monterey defendant left Claypole worse off than when he started, so there was no continuing duty to monitor him after he was out of custody. Even the alleged failure by Monterey City officers to tell Monterey County about Claypole's allegedly suicidal statements is not actionable because Monterey County Jail still put Claypole on suicide watch. It was only after Claypole was taken off suicide watch, a superseding cause, that he killed himself. This was unforeseeable to City of Monterey defendants. It is plain from the face of the complaint that if Plaintiffs did suffer violations of their constitutional rights, the City of Monterey defendants did not cause them, so Plaintiffs' complaint as to the City of Monterey defendants should be dismissed without leave to amend.

## II.
## FACTS

According to Plaintiffs' Complaint, Claypole's interactions with City of Monterey personnel began and ended on the afternoon of May 1, 2013. Plaintiffs allege that Monterey City officers arrived in Seaside to take custody of Claypole from Seaside Police Department officers

1  after the Seaside officers detained Claypole in a stolen pickup truck sometime after Claypole's
2  1:10 p.m. fatal stabbing of taxi driver Daniel Garcia Huerta.  **Compl. 14:17-15:19; ¶58.**
3  　　　　　Plaintiffs have alleged that when Claypole was seated in the back of Defendant Officer
4  Hall's squad car after arrest, Claypole spontaneously asked Officer Hall, "can you ask for the
5  [lethal] injection?" and told Officer Hall, "I had to do it."  **Compl. 15:21-15:24; ¶59.**  Claypole
6  later allegedly told Officer Hall during the booking process, "Should I go?  I should just take the
7  injection."  **Compl. 15:25-15:26; ¶60.**  Plaintiffs further allege that, while waiting to be
8  interviewed by a detective, Claypole asked Officer Hall, "is my mom going to get my remains?"
9  and stated that he wanted to die by lethal injection and that he wanted to have his body cremated.
10  **Compl. 15:27-16:1; ¶61.**
11  　　　　　Claypole was released from Monterey City Police custody and taken to Monterey County
12  Jail where he met with his attorney, John Klopfenstein, around 8:30 p.m. on May 1.  **Compl.**
13  **16:9-16:10; ¶63.**  Plaintiffs allege that no Monterey City Police Department officer informed
14  Monterey County, Claypole's subsequent custodian, that Joshua Claypole was acting strangely
15  or a suicide risk, and that City of Monterey failed to assess Claypole's mental health issues
16  adequately during the seven hours Claypole was in City custody.  **Compl. 16:2-16:8; ¶62.**
17  Plaintiffs allege that City of Monterey defendants failed to take any appropriate or necessary
18  action in the face of a clearly paranoid and suicidal detainee.  **Compl. 16:6-16:8; ¶62.**
19  　　　　　Despite this alleged failure by City of Monterey defendants to adequately assess Claypole
20  and inform Monterey County of Claypole's suicide risk, Claypole was put on suicide watch at
21  the Monterey County Jail on May 3, 2013, at 2:35 p.m.  **Compl. 17:19-17:23; ¶69.**  Monterey
22  County released Claypole from suicide watch at approximately 6:30 a.m. on May 4, 2013.
23  **Compl. 17:24-17:26; ¶70.**   Monterey County Jail staff found Claypole hanging in his cell later
24  that day, around 2:30 p.m. on May 4, 2013.  **Compl. 18:9-18:11; ¶73.**
25  　　　　　Plaintiffs allege only two claims for relief against the City of Monterey, Chief Penko, and
26  Officer Hall.  Plaintiffs' Second Claim for Relief is for alleged failure to protect from harm in
27  violation of the Fourteenth Amendment.  **Compl. 21:17-23:1; ¶¶90-97.**  Plaintiffs' Third Claim
28

for Relief is for alleged deprivation of substantive due process rights in violation of the First and Fourteenth Amendments for loss of the parent-child relationship. **Compl. 23:2-23:24; ¶¶98-101.**

### III.

### ARGUMENT

**A.   Standard on Motion to Dismiss.**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss on the ground that there is a "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Dismissal can be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990). For purposes of evaluating a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint," (*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)), but need not accept as true allegations that are legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988, *amended,* 275 F.3d 1187 (9th Cir.2001). Mere conclusions couched in factual allegations are not sufficient to state a cause of action. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *see also McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir.1988).

A complaint can survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009).

**B.     City of Monterey defendants had no duty to Claypole to protect him from private harm, including suicide, so Plaintiffs' second claim for relief must be dismissed without leave to amend as to all City of Monterey Defendants.**

Only under highly limited circumstances does the government have a duty to protect individuals from deprivations of constitutional rights by private individuals. *Van Ort v. Estate of Stanewich* 92 F.3d 831, 836 (9th Cir. 1996).  "[T]he general rule is that [a] state is not liable for its omissions." *Munger v. City of Glasgow Police Dep't.,* 227 F.3d 1082, 1086 (9th Cir. 2000).

A 42 U.S.C. § 1983 claim based on the government's omission or failure to protect requires two essential elements: (1) the conduct that harms the plaintiff must be committed under color of state law, and (2) the conduct must deprive the plaintiff of a constitutional right. *Ketchum v. Alameda Cnty.,* 811 F.2d 1243, 1245 (9th Cir. 1987). The Fourteenth Amendment's Due Process Clause generally does not require government actors to protect individuals from third parties or themselves, even where such aid may be necessary to secure life, liberty, or property interests.  *Patel v. Kent Sch. Dist.,* 648 F.3d 965, 974 (9th Cir. 2011) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)).  There are two exceptions to this rule: (1) when a "special relationship" exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with "deliberate indifference" to a "known or obvious danger" (the state-created danger exception).  *Patel v. Kent Sch. Dist.,* 648 F.3d 965, 974 (9th Cir. 2011) (internal citations omitted).

**1.     There was no special relationship between City of Monterey and Claypole after Claypole left City of Monterey custody giving rise to any duty to protect him from himself.**

The prevailing rule is that "citizens have no constitutional right to be protected by the state from attack by private third parties, absent some special relationship between the state and the victim or the criminal and the victim that distinguishes the victim from the general public." *Ketchum, supra,* 811 F.2d at 1247.  In defining this "special relationship," courts have considered "whether there is a custodial relationship created or assumed by the state, whether the

state is aware of a specific risk of harm to the plaintiff, or whether the state has affirmatively placed the plaintiff in a position of danger." *Id.* (internal citations omitted).

The government's constitutional duty arises "not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which [the State] has imposed on his freedom." *DeShaney, supra,* 489 U.S. at 200 (1989). "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf" which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means. *Id*. at 195, 200. A person's substantive due process rights are triggered under this exception when the state restrains his liberty, not when he suffers harm caused by the actions of third parties. *Id*.

After Claypole transferred out of City of Monterey custody and into the custody of the County of Monterey, no special relationship arose between City of Monterey and Claypole by virtue of the City of Monterey officers' alleged knowledge of Claypole's risk of suicide. City of Monterey defendants' alleged awareness of a particular risk to Claypole, or any alleged commitment to Claypole to protect him, absent affirmative City action that restrained Claypole's freedom to act on his own behalf, did not create a continuing special relationship after Claypole was released from City of Monterey's custody. See *DeShaney, supra*, 489 U.S. at 195, 200. Claypole was not in City of Monterey custody after 8:30 p.m. on May 1, 2013, and City of Monterey did nothing to induce Claypole to rely on City of Monterey defendants after he was transferred to the Monterey County Jail, so there was no duty to protect Claypole on the part of any City of Monterey defendant.

**2.   There was no danger to Claypole created by City of Monterey, so City owed Claypole no protection duty on that basis.**

The state-created danger exception "applies only where there is affirmative conduct on the part of the state in placing the plaintiff in danger" and "only where the state acts with deliberate indifference to a known or obvious danger." *Patel,* 648 F.3d at 974 (internal quotation marks omitted). For this exception to apply, a government actor must "affirmatively create . . .

an actual, particularized danger [that the plaintiff] would not otherwise have faced." *Kennedy v. City of Ridgefield,* 439 F.3d 1055, 1063 (9th Cir. 2006). The danger creation exception thus requires some affirmative act by the state before a duty to protect will arise. *Wood v. Ostrander,* 879 F.2d 583, 588–90 (9th Cir. 1989); *Munger v. City of Glasgow Police Dept.,* 227 F.3d 1082, 1086 (9th Cir. 2000). In *L.W. v. Grubbs,* the court imposed liability because the defendants, who assigned the victim to work alone with an inmate known to be a sexual predator, "used their authority as state correctional officers to create an opportunity for [the inmate] to assault L.W. that would not otherwise have existed." 975 F.2d 119, 121 (9th Cir. 1992).

Plaintiffs fail to state a cognizable claim on a state-created danger theory because there is no allegation that the City placed Claypole in danger, or that it enhanced his vulnerability to the danger he already faced. Plaintiffs have failed to plead facts showing some affirmative act on the part of the City that either created a danger to Claypole or rendered him more vulnerable to an existing danger. The state-created danger exception to the general rule against governmental liability for omissions does not apply here. Owing no duty to Claypole, City of Monterey defendants could not have violated Claypole's constitutional rights, and the City of Monterey defendants' motion to dismiss should be granted without leave to amend.

Plaintiffs have failed to state a claim upon which relief can be granted against Defendant City of Monterey because it owed Claypole no duty, so nothing done according to its policies, practices, or customs, could cause a violation of Claypole's constitutional rights. The City of Monterey, a government entity, may not be held liable under 42 U.S.C. § 1983 unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. *Monell,* 436 U.S. at 694. To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that the policy amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy was the moving force behind the constitutional violation. *Plumeau v. School Dist. # 40 Cnty. of Yamhill,* 130 F.3d 432, 438 (9th Cir. 1997). Without an underlying violation of Claypole's rights, there can be no municipal liability on the part of the City of Monterey.

Defendants' motion to dismiss should be granted without leave to amend as to Defendant City of Monterey and the rest of the City of Monterey Defendant.

**3.    The actions of Monterey County were a superseding cause, precluding any liability on the part of City of Monterey defendants for failure to protect Claypole from himself.**

To establish § 1983 liability for failure to protect Plaintiff from private harm, Plaintiff must prove that the defendant placed Plaintiff in the harmful path of a third party not liable under § 1983. *See Kennedy, supra,* 439 F.3d at 1062 n. 2. Plaintiff must demonstrate that it was foreseeable to defendant that injury to Plaintiff might result from his or her actions. *Id.* at 1064 n. 5; *Hines v. United States,* 60 F.3d 1442, 1450 (9th Cir.1995) ("The question of proximate cause is usually defined with reference to the scope of the foreseeable risks of the actor's conduct"); *see also Van Ort, supra*, 92 F.3d at 837 (applying foreseeability test to question of proximate cause in section 1983 action).

Even where some risk is foreseeable, however, a defendant cannot be held liable where "injury was actually brought about by a later cause of independent origin *that was not foreseeable." Exxon Co., U.S.A. v. Sofec, Inc.,* 517 U.S. 830, 837, 116 S.Ct. 1813, 135 L.Ed.2d 113 (1996) (emphasis added); see also Restatement (2d) of Torts § 440 cmt. b (1965) ("[S]uperseding cause relieves the actor of liability, irrespective of whether his antecedent negligence was or was not a substantial factor in bringing about the harm"). The presence of a superseding cause has been held to prevent the direct causal connection required for liability in § 1983 cases. *See Van Ort, supra*, 92 F.3d at 837 (holding that, in § 1983 actions, the Ninth Circuit has looked to "[t]raditional tort law" to define "intervening causes that break the chain of proximate causation"); *White v. Roper,* 901 F.2d 1501, 1506 (9th Cir.1990) (observing that a defendant's "conduct is not the proximate cause of [plaintiffs] alleged injuries if another cause supersedes his liability for the subsequent events").

In this case, Plaintiffs fault City of Monterey defendants for failing to relay information about Claypole's allegedly suicidal statements and for failing to adequately assess him before handing him over to Monterey County. Even if those omissions were actionable, which is not

admitted, they cannot be said to have caused Claypole's suicide because Monterey County did still put Claypole on suicide watch. Claypole's subsequent removal from suicide watch and suicide were not foreseeable to City of Monterey defendants. The complaint should be dismissed without leave to amend as to each of the City of Monterey defendants.

**C.   Chief Penko was not personally involved in contact with Claypole and Claypole's rights were not violated as there was no duty, so Plaintiffs cannot state a legally cognizable claim against Chief Penko and their Complaint as to Chief Penko should be dismissed without leave to amend.**

An official deprives a plaintiff "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir. 1978). "[A] supervisory official cannot be held liable under [§ 1983 on] the theory of respondeat superior." *Lindgren v. Curry,* 451 F. Supp. 2d 1073, 1075 (C.D. Cal. 2006) (stating that a supervisor "may be liable for constitutional claims [only] if he or she was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation," and citing *Redman v. Warden of San Diego,* 942 F.2d 1435, 1446-47 (9th Cir. 1991) (en banc)).

Plaintiffs do not allege that Chief Penko was personally involved in any violation of Plaintiffs' constitutional rights. Moreover, Monterey City officers who were involved with Claypole did not violate his rights, as explained above, so Plaintiffs cannot state a claim against Chief Penko on a supervisory liability theory. Plaintiffs' complaint should be dismissed without leave to amend as to Chief Penko.

**D.   Plaintiff Guersenzvaig has failed to allege facts sufficient to state a claim against any City of Monterey defendant for violation of her rights to familial association with her son because no City of Monterey defendant violated Claypole's constitutional rights or caused Claypole's death.**

1   Plaintiffs' third claim for relief is for an alleged violation of Plaintiff Guersenzvaig's
2   right to familial relationship under the First, Fourth, and Fourteenth Amendments.  This claim as
3   it is alleged against City of Monterey defendants is solely based on the City's alleged failure to
4   take steps to protect Claypole from himself, allegedly resulting in Claypole's death by suicide.
5   The Ninth Circuit recognizes that a parent has a constitutionally protected liberty interest under
6   the Fourteenth Amendment in the companionship and society of his or her child.  *Curnow v.*
7   *Ridgecrest Police,* 952 F.2d 321, 325 (9th Cir. 1991).  "Official conduct that 'shocks the
8   conscience' in depriving parents of that interest is cognizable as a violation of due process."
9   *Wilkinson v. Torres,* 610 F.3d 546, 554 (9th Cir. 2010); see also *Cnty. of Sacramento v. Lewis,*
10  523 U.S. 833, 846 (1998).
11      To prevail on a 42 U.S.C. § 1983 due process claim, a plaintiff must first prove a
12  violation of the underlying constitutional right.  *Daniels v. Williams,* 474 U.S. 327, 330 (1986).
13  Plaintiff Guersenzvaig's familial association claims are predicated on the same violation of
14  substantive due process rights under the Fourteenth Amendment that Plaintiffs allege in their
15  second cause of action, i.e., that Claypole's rights were violated by the City's failure to protect
16  him.  **Compl. 23:2–23:24; ¶¶ 98-101**.  Because City of Monterey defendants owed no duty to
17  Claypole, there can be no First or Fourteenth Amendment violations as to Guersenzvaig.  *J.P. ex*
18  *rel. Balderas v. City of Porterville,* 801 F.Supp.2d 965, 988 (E.D. Cal. 2011) ("Where a claim for
19  interference with familial relationships is integrally predicated upon, or entwined with, other
20  conduct that is alleged to be unconstitutional, a finding that the other conduct was constitutional
21  generally will preclude recovery for interference with familial relationship").  Dismissal without
22  leave to amend is therefore appropriate as to Claypole's mother's familial association claims
23  brought pursuant to the First and Fourteenth Amendments as alleged in Plaintiffs' third claim for
24  relief.
25
26
27
28

# III.

# **CONCLUSION**

For the reasons stated above, Defendants respectfully request that the Court dismiss Plaintiffs' complaint without leave to amend pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted against the City of Monterey, Chief Penko, and Officer Hall.

Dated:  August 5, 2014

                         LAW OFFICES OF VINCENT P. HURLEY
                         A Professional Corporation


                         By:   /s/
                               AMANDA COHEN
                         Attorneys for Defendants CITY OF MONTEREY, CHIEF PHILIP PENKO, and OFFICER BRENT HALL